*In re* ESTATE OF CLARENCE G. JAMES, Deceased.—(CHARLES A. JAMES, Adm'r of the Estate of Clarence G. James, Deceased, Petitioner-Appellant, *v.* MADELINE JAMES, Respondent-Appellee.)

Second District (2nd Division)  No. 75-334

Opinion filed July 15, 1976.

Joseph L. Polito, of South Beloit, for appellant.

Paul Sorenson, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
This appeal is from an order of the circuit court of Winnebago County denying the petition of Charles A. James, administrator of the estate of

Clarence G. James, deceased, for a turnover order for the sum of $12,996.08. These funds were on deposit in a "joint stock account" in Gunite Employees Credit Union in the names of decedent and Madeline James, as joint tenants with the right of survivorship. The order which was entered after the court heard the evidence offered by the administrator (decedent's son), also granted the motion of Madeline James to strike and dismiss the petition.

The material facts which appear from the petition are: The decedent and Madeline James were husband and wife at the time the joint stock account with right of survivorship was opened. Subsequently, on November 6, 1967, a judgment for divorce was entered dissolving their marriage which approved a property settlement agreement. That agreement included a recital that, "The parties desire to settle all property matters, real and personal  *  *  *," but while it provided for specific division of real estate and furniture and furnishings it made no reference whatever to this joint account. The petition further alleged that subsequent to the filing of the divorce suit the relationship between the decedent and Madeline James became "unfriendly," and that decedent did effect a change of beneficiary on an insurance policy placed through Gunite Employees Credit Union from Madeline James to his son, Charles, who is the administrator of his father's (decedent's) estate. Madeline James made no deposits to or withdrawals from the account at any time. At the time the divorce decree was entered there was $1820 in the account. All deposits and withdrawals were made by the decedent and at the time of his death the balance in the account was $12,996.08. The petition also alleged (and Charles so testified) that the decedent had told his son, subsequent to the divorce, that the money on deposit in the account was to go to Charles.

The only evidence offered by the administrator at the hearing on his petition for turnover was the testimony of Charles. He testified in substance that in a conversation with Madeline James on March 7, 1975, after his father died, that Madeline James said she had no claim against his father's estate, and that when he informed her of the account she said she would assign her interest in the joint account to the estate; but that when he tendered a form of assignment to her for signature a week later, she declined. On cross-examination he admitted that Madeline James had knowledge of the creation of the joint account, and testified that Madeline told him during that conversation that the account was "set out in the divorce and that he [presumably the decedent] signed it over to her."

At the close of the administrator's evidence in support of the petition for turnover, the trial court entered the order appealed from.

The only issue presented in this case is whether the facts alleged in the petition and the evidence adduced in its support are sufficient to

overcome the presumption of donative intent.[1] The administrator argues that the recital in the property settlement agreement entered into by the decedent and Madeline James (and approved by the divorce decree) expressing their desire to settle all property matters, their "unfriendliness" toward each other, the testimony of the decedent's son that the decedent had told him the money in the account was to pass to him after decedent's death, and the fact that Madeline had stated a willingness to assign her interest in the account to the estate before declining to do so, and that decedent was the only person to make deposits or withdrawals from the account, are sufficient to overcome the presumption.[2]

In *Murgic v. Granite City Trust & Savings Bank*, 31 Ill. 2d 587, 591, which involved an action by the surviving joint tenant (a friend of the deceased and not related to him) for the proceeds of a savings account to which the friend made no monetary contribution, the Supreme Court, in affirming the judgment in favor of the surviving joint tenant, held:

> "[A]n instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement."

This rule has been followed repeatedly in Illinois. (See, for example, *In re Estate of Hochner*, 31 Ill. App. 3d 523; *In re Estate of White*, 56 Ill. 2d 265, 269.) It has also been repeatedly held that "lack of donative intent [by clear and convincing evidence] must focus upon or relate back to the time of the creation of the joint tenancy." (*In re Estate of Fidler*, 23 Ill. App. 3d 1046, 1052; *Hayes v. Lewis*, 33 Ill. App. 3d 186, 190.) None of the facts presented here either "focus upon or relate back to the time of the creation of the joint tenancy" in question.

Therefore, the judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.

---

[1] No question has been raised as to compliance by the parties with the statutory requirements in the creation of a joint account with right of survivorship as provided in section 2 of the Act in relation to joint rights and obligations (Ill. Rev. Stat. 1973, ch. 76, par. 2) and section 8 of the Credit Union Act (Ill. Rev. Stat. 1973, ch. 32, par. 496.8).

[2] However, after reciting the foregoing facts the administrator merely states that "when they are all taken together, the evidence seems to state that no gift was intended."