*In re* ESTATE OF LORRAINE J. BLOM, Deceased (Karl Blom, Ex'r of the Estate of Lorraine J. Blom, Deceased, Petitioner-Appellee v. Linda Usher, Respondent-Appellant).

Second District No. 2—91—1103

Opinion filed September 9, 1992.

NICKELS, J., dissenting.

Donald R. Brewer, of Dundee, for appellant.

Leonard Cuttone, of Park Ridge, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Lorraine Blom died November 7, 1988. Karl Blom, as executor of her estate, filed a citation to recover the proceeds of a money market account held in joint tenancy by decedent and respondent, Linda Usher. Respondent appeals the trial court's order that she turn over the balance of the account to the estate.

In 1987, decedent had cancer and her condition was slowly deteriorating. She was estranged from her only son, Karl. Respondent was a

cousin of decedent. In January 1987, decedent executed a will naming respondent as primary beneficiary and executor. On June 20, 1987, decedent created a joint tenancy account with respondent at the McHenry State Bank by adding respondent's name to an existing money market account. Ambrose Kittl, a vice-president of the bank, explained to decedent the characteristics of a joint tenancy account, including the right of survivorship.

Decedent subsequently executed a general power of attorney to respondent so that the latter could pay decedent's bills and generally handle her affairs. At this time, decedent was mentally alert but was physically impaired by the cancer.

Sometime during 1988, decedent reconciled with her son, Karl, who thereafter helped care for her. On October 20, 1988, decedent executed a second will naming Karl as executor and primary beneficiary. The will was prepared by attorney Leroy Welter and executed at decedent's home.

On November 1, 1988, respondent transferred $2,000 from the money market account to decedent's checking account in order to pay decedent's bills. On November 5, 1988, respondent closed the money market account. That same day she paid approximately $1,000 for decedent's funeral expenses pursuant to a pre-need agreement. On November 7, decedent died.

Karl Blom, as executor of the estate, filed a citation against respondent to recover the balance of the money market account as well as certain items of personal property which respondent allegedly removed from decedent's home after her death. Following a hearing, the court ordered respondent to turn over to the estate the balance of the account, $22,287.99 as well as other property not presently at issue. Following the denial of her motion to reconsider, respondent now appeals.

On appeal, respondent contends that the court erred in finding that the account proceeds were the property of the estate. Specifically, she maintains that the estate failed to rebut by clear and convincing evidence the statutory presumption that the opening of the joint account constituted a gift of the funds to respondent and that the court erred in considering evidence of events prior and subsequent to the opening of the account as bearing on the decedent's intent. The estate responds that the only direct evidence of the decedent's intention shows that she placed respondent's name on the account solely for decedent's convenience.

■ When a joint account is created in conformity with statutory requirements (see Ill. Rev. Stat. 1987, ch. 76, par. 2), a presumption

arises that the person who furnishes the funds for the account intends to make a gift to the other person who is designated owner of the funds. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 590; *In re Estate of Martin* (1990), 201 Ill. App. 3d 1061, 1064.) The presumption is rebuttable, but the party challenging it has the burden of proving by clear and convincing evidence that no gift was intended. (*Murgic*, 31 Ill. 2d at 591; *Martin*, 201 Ill. App. 3d at 1064.) The critical question is the intent of the alleged donor at the time the account was created (*In re Estate of Dawson* (1968), 103 Ill. App. 2d 362, 367-68), but subsequent events may be considered as bearing on the issue of intent (*In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 555; *Dawson*, 103 Ill. App. 2d at 368). Evidence that the transfer was made for the mere convenience of the creator of the account is an indication of lack of donative intent. *Guzak*, 69 Ill. App. 3d at 555.

In the present case, respondent contends that there was no direct evidence of the decedent's intent at the time the account was created and that the court improperly based its finding on evidence of events occurring after the opening of the account. Respondent's theory appears to be that the placing of respondent's name on the money market account was part of decedent's estate plan, which included making respondent the executor and primary beneficiary of her will. Following decedent's reconciliation with her son, she changed her estate plan, making him the executor and beneficiary of her new will. The estate points to evidence that decedent consulted with her lawyer shortly before her death about revoking the power of attorney and asked respondent to take her name off the account. However, neither of these things was legally accomplished prior to her death. Respondent contends that decedent's subsequent change of heart is irrelevant in determining her initial intent where she failed to take the legal steps necessary to revoke the alleged gift.

The estate points to the testimony of Florence Welter, the wife of decedent's lawyer and a family friend. Welter stated that, about the time decedent had respondent's name added to the account, Welter had a conversation with the decedent. The decedent told her that she thought she would have respondent's name added to the account so that her cousin would have access to the money (in addition to the checking account covered by the power of attorney) in case of some major medical or other emergency and that she was going to put respondent's name on the account as a matter of convenience.

In addition, during respondent's deposition, when asked whether her name was put on the account for decedent's convenience, she responded:

"Yes. *** Well, it wasn't really discussed. It was just on there."

■ The trial judge is in the best position to make a determination as to the credibility of the witnesses and the weight to be afforded their testimony. (*White v. Raines* (1991), 215 Ill. App. 3d 49, 60.) The trial court's findings of fact will not be disturbed unless they are contrary to the manifest weight of the evidence. (*White*, 215 Ill. App. 3d at 60.) In the present case, we cannot conclude that the trial court's finding that the account was created solely for the convenience of the decedent was against the manifest weight of the evidence. Florence Welter testified that the decedent told her she wanted to put respondent's name on the account for decedent's convenience so that respondent would have access to the money in case some catastrophic emergency befell decedent and the funds in her checking account proved insufficient. This was consistent with evidence that she also gave respondent a general power of attorney which permitted respondent to pay decedent's bills on a regular basis. Respondent's above-quoted answer to a deposition question appears to be consistent with an interpretation that her name was added only for the decedent's convenience.

In contrast, there was no direct evidence of a contrary intention. Respondent relies on the presumption arising from the execution of the joint account agreement itself and Kittl's testimony that he explained the consequences to decedent. However, Kittl also stated that the bank did not have "signature for convenience" accounts. Thus, the joint account agreement would have been the only method available to decedent to accomplish her purpose.

The evidence of subsequent events, such as changing the will, does not directly bear on the issue and can be viewed as supporting either theory. The trial court, which had the opportunity to observe the witnesses and their demeanor, chose to accept the estate's version. The court's conclusion is supported by the evidence.

For the foregoing reasons, the court's judgment is affirmed.

Affirmed.

BOWMAN, J., concurs.

JUSTICE NICKELS, dissenting:

Because I find the trial court's determination that petitioner presented clear and convincing evidence sufficient to overcome the presumption of decedent's donative intent at the time of the creation of the joint tenancy was against the manifest weight of the evidence, I respectfully dissent.

The creation of a joint tenancy is presumed to have been made with donative intent unless the party seeking to avoid the gift comes forward with clear and convincing evidence that, at the time of the creation of the joint tenancy, no gift was intended. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 589.) This burden does not shift to the survivor of the joint tenancy. (*Murgic*, 31 Ill. 2d at 591.) Clear and convincing evidence is something less than beyond a reasonable doubt, but something more than a preponderance of the evidence. (*In re Stephenson* (1977), 67 Ill. 2d 544, 556-59.) However, factors that may be considered include evidence that the transfer was made *solely* for the convenience of the creator and the value of the account in relation to the total assets of the estate. (See *Guzak*, 69 Ill. App. 3d at 555.) Especially relevant, however, is the retention of control and authority over the account by the grantor. (*Guzak*, 69 Ill. App. 3d at 555.) Thus, circumstances and events that occur after the creation of the account may be considered. *Guzak*, 69 Ill. App. 3d at 555.

In addition to the presumption of donative intent, respondent offered evidence that, at the time of the creation of the joint tenancy, the right of survivorship was fully explained to and understood by decedent. Shortly before the creation of the joint account, decedent indicated an intent to make a future gift to respondent by naming respondent as the executor and primary beneficiary under decedent's will. Decedent also executed a power of attorney in favor of respondent and relinquished all control over her financial affairs to respondent. The joint account contained slightly more than $22,000 in contrast to the balance of decedent's estate in excess of $150,000.

To rebut the presumption and this circumstantial evidence, petitioner offered testimony of decedent's attorney's spouse, who was a family friend, that decedent had indicated that the account was created so that respondent would have access to the funds to pay any extraordinary medical expenses incurred by decedent, and respondent's affirmative response to a question at her deposition inquiring whether the creation of the joint account was for decedent's convenience. Thus, there was some evidence that the creation of the joint account was as a convenience for decedent.

However, such evidence does not rise to the level of clear and convincing evidence. The crucial factor of retained control is absent. (*Guzak*, 69 Ill. App. 3d at 555-56.) There is no evidence that convenience was the *sole* reason for decedent's actions. (See *In re Schneider* (1955), 6 Ill. 2d 180, 183 (decedent told joint tenant that purpose of joint account was "in case I am sick you can go and get the money for me").) Respondent qualified her affirmative response to a question concerning

522

the creation of the joint account for decedent's convenience by indicating that there had been no discussion of the matter. Although the creation of the joint account was undoubtedly convenient for decedent, absent evidence of retained control or an express indication that it was created solely as a matter of convenience for decedent, it does not absolutely follow that decedent did not also intend respondent to eventually receive such funds.

Petitioner's evidence was insufficient to rebut the presumption of donative intent arising from the creation of the joint account, which was further circumstantially supported by evidence of decedent's conduct in contemporaneously naming respondent her primary beneficiary, evidence of decedent's clear understanding of the import of the creation of the joint account, and the complete lack of control or authority retained by decedent over such account. Therefore, because I would hold that petitioner failed its burden of proof to rebut by clear and convincing evidence the presumption of donative intent at the time the joint account was created, I respectfully dissent.